UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NONOTUCK RESOURCE ASSOCIATES, INC. </br></br>Plaintiff, </br></br>v. </br></br>FOOTHOLD TECHNOLOGY, INC., </br></br>Defendant. | ) ) ) ) ) ) ) Case No. 17-cv-30087-MGM ) ) ) ) ) |

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND TO STATE COURT; DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION; AND PLAINTIFF'S MOTION TO STAY ARBITRATION
(Dkt. Nos. 7, 8, 19)

I. INTRODUCTION

Plaintiff Nonotuck Resource Associates, Inc. ("Plaintiff" or "Nonotuck") entered into a contract with defendant Foothold Technology, Inc. ("Defendant" or "Foothold") effective May 1, 2016 requiring Defendant to install, and service a software program to track and store Plaintiff's data and generate related reports (Dkt. No. 26 at 2, ¶¶ 6-7). The complaint alleges that Defendant misrepresented its software's capabilities and its ability to complete the project on time (*id.* at 2-3, ¶ 8). Plaintiff filed its complaint, which includes claims under the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A, §11 ("Chapter 93A") (Count I); breach of contract (Count II); breach of oral express warranties (Count III); breach of implied warranty of merchantability ("Count IV); breach of implied warranty of fitness for particular purpose (Count V); and a Motion to Stay Arbitration Proceedings, in the Superior Court Department of the Massachusetts Trial Court, Hampshire County, on June 8, 2017, and served Defendant in hand

on June 26, 2017 (Dkt. No. 1 at 2, ¶ 6; Dkt. No. 5 at 2, 6-10).  Defendant timely filed its notice of removal, invoking this court's diversity jurisdiction, on July 24, 2017 (Dkt. No. 1 at 2, ¶ 6).

In this court, Plaintiff has filed a Motion to Remand to State Court (Dkt. No. 7) and a Motion to Stay Arbitration (Dkt. No. 19).  Defendant has filed a Motion to Dismiss and Compel Arbitration (Dkt. No. 8).  These three motions were referred to me for Report and Recommendation (Dkt. Nos. 18, 20).  *See* 28 U.S.C. 636 § (a), (b)(1)(A).  For the reasons set forth below, I recommend that: (A) Plaintiff's Motion to Remand to State Court be denied; (B) Defendant's Motion to Dismiss and Compel Arbitration be granted; and (C) Plaintiff's Motion to Stay Arbitration be denied.

II. RELEVANT BACKGROUND

The parties entered into a Foothold Technology, Inc. Subscriber Agreement ("Agreement") with an effective date of May 1, 2016 (Dkt. No. 5 at 12).  The Agreement, which is attached as Exhibit 1 to the complaint, set forth the term and the services to be provided.  An addendum to the Agreement, incorporated therein by reference, stated that Foothold would install an initial configuration of its AWARDS system within 4 months of the effective date of the agreement, train Nonotuck employees on use of the system, and provide up to ten hours per week of email troubleshooting support services at no additional costs as long as the service agreement remained in effect (*id.* at 17).  Custom development would be available subject to Foothold's availability at Foothold's customary rates (*id.*).

Section 15 of the Agreement, captioned "MISCELLANEOUS," provided, in pertinent part, as follows:

> Any dispute arising hereunder shall be exclusively settled by confidential and binding arbitration under the then current Arbitration Rules of the American Arbitration Association (the "AAA"); *provided, however*, that nothing in this Agreement shall prohibit (i) either party from seeking injunctive or other

> equitable relief in any court of competent jurisdiction in the event of a breach by the other party or any of its Agents of the provisions of Section 7 (Confidentiality) or to prevent any other unauthorized copying, disclosure, use, retention or distribution of its Confidential Information or intellectual or other property or (ii) Supplier from bringing a Collection Action in any court of competent jurisdiction.

(*Id.* at 14).

On or around March 21, 2017, Plaintiff sent a Chapter 93A demand letter to Defendant, stating that Plaintiff was ceasing payments to Defendant under the Agreement on the basis of alleged breaches of the Agreement by Defendant (*id.* at 18-21). On May 2, 2017, Defendant responded to the letter by proposing that the parties terminate the Agreement effective April 30, 2017 and exchange mutual releases of all claims concerning the Agreement (*id.* at 26). On May 31, 2017, Foothold commenced an arbitration proceeding based on Nonotuck's failure to make payments due to Foothold under the Agreement (*id.* at 27). On June 8, 2017, following Foothold's commencement of the arbitration proceeding, Nonotuck filed this action in Hampshire Superior Court (*id.* at 2-3). The complaint alleges that Plaintiff is a Massachusetts non-profit agency operating throughout Massachusetts with its principal place of business in Northampton, with the Defendant being a corporation with its principal place of business in New York (*id.* at 5). Plaintiff claims to have been damaged in the amount of $200,000 and to be entitled to treble damages under Chapter 93A (*id.* at 9-10). Despite its state court filing, Nonotuck appeared and has participated in the arbitration proceeding, in which an arbitrator has been selected (Dkt. No. 9 at 2). At the hearing on the pending motions, the parties informed the court that the arbitrator was waiting for rulings from this court on the pending motions before moving forward with the arbitration proceeding.

    III.    D<small>ISCUSSION</small>

    A.  <u>Plaintiff's Motion to Remand to State Court</u>

3

Pursuant to 28 U.S.C. § 1332, this court has original jurisdiction of any action that is between citizens of different States when the amount in controversy exceeds the sum of $75,000. This action is between citizens of different states – New York and Massachusetts – and the amount in controversy exceeds $75,000 (Dkt. No. 5 at 5, 8-9). Section 1441 of Title 28 of the United States Code provides that a defendant (here, Foothold) may remove an action over which this court would have original jurisdiction as long as removal is made "in accordance with section 1446 of . . . title [28]." 28 U.S.C. § 1441(e). Plaintiff does not dispute that this case meets the requirements for diversity jurisdiction, nor does it assert that Defendant failed to remove this case in accordance with the provisions of section 1446. It is black letter law that when a defendant has properly removed a case based on diversity jurisdiction, a "District Court [cannot] properly . . . eliminate[] the case from its docket, whether by a remand or by a dismissal." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988) (citing *Thermitron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 344 (1976)). "[D]iversity jurisdiction . . . is not discretionary." *Id.* Plaintiff's contention that the state court has jurisdiction over this case is irrelevant as long as the case was properly removed to this court. It was. "[W]hen, [as here,] a federal court has jurisdiction, it also has a 'virtually unflagging obligation . . . to exercise' that authority." *Mata v. Lynch*, 135 S.Ct. 2150, 2156 (2015) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)). Because this case was properly removed to this court and this court has a non-discretionary obligation to provide a forum for the parties' dispute, I recommend that Plaintiff's Motion to Remand to State Court be denied.

    B.  <u>Defendant's Motion to Dismiss and Compel Arbitration</u>

Plaintiff apparently does not dispute that its common law claims in Counts II through V of its complaint are subject to arbitration.[1] It opposes Defendant's motion to compel arbitration primarily on the basis that its statutory Chapter 93A claims are not subject to arbitration (Dkt. No.14 at 4-5), and it contends that this court – not the arbitrator – must decide the question of whether those claims are covered by the Agreement's arbitration clause (Dkt. No. 14 at 1-2). Defendant does not appear to contest that this court, as opposed to the arbitrator, must decide whether Plaintiff's Chapter 93A claims are subject to arbitration. Rather, it argues that Plaintiff's claims are within the scope of the arbitration clause (Dkt. No. 9 at 3-5).

The parties' Agreement is within the ambit of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"). The Agreement is between a New York corporation and a Massachusetts non-profit corporation for services to be delivered over the internet. *See generally, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (per curiam) (FAA applies to enforcement of arbitration provisions where contract involves interstate commerce; FAA applies to the full reach of the Commerce Clause); *see also McInnes v. LPL Fin., LLC*, 994 N.E.2d 790, 792 (Mass. 2013) (consumer claim under Chapter 93A must be referred to arbitration where the contract involved interstate commerce and agreement to arbitrate claims was enforceable under the FAA). The standards that apply to the question of whether Defendant is entitled to compel arbitration of all of the claims in the complaint are well-established. "To compel arbitration, [Defendant] 'must demonstrate that a valid agreement to arbitrate exists, that [it is] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim[s] asserted come[] within the clause's scope.'" *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 784 F.3d 1, 6

---

[1] Nonotuck could not credibly claim that its breach of contract and breach of warranty claims in Counts II through V do not "arise under" the Agreement.

(1st Cir. 2014) (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)). Only the last of these issues is in dispute.

"The arbitrability of [Plaintiff's Chapter 93A claims] turns on the interpretation of contractual terms, a question of law which [the court] can determine in the first instance." *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 388 (1st Cir. 1993). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "To determine whether [a party's] claims fall within the scope of the arbitration clause, '[courts] focus on the factual allegations underlying [the] claims in the [c]omplaint.'" *Grand Wireless, Inc.*, 748 F.3d at 7 (quoting *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 378 (1st Cir. 2011)).

As a backdrop to this inquiry, the court must keep in mind "the strong federal policy favoring arbitration agreements, a policy which requires [the court] to resolve 'any doubts' concerning arbitrability in favor of arbitration." *Gilbane Bldg. Co.*, 992 F.2d at 388 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *J & S Constr. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809, 820 (1st Cir. 1975)). When deciding whether a particular claim falls within the scope of the parties' arbitration agreement, courts apply ordinary state law principles concerning contract formation, keeping "the federal policy in favor of arbitration in mind, such that, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.'" *Grand Wireless, Inc.*, 748 F.3d at 7 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "[C]ourts 'discharge this duty by: (1) applying [a] presumption of arbitrability

6

only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted.'" *Dialysis Access Ctr.*, 638 F.3d at 376 (quoting *Granite Rock Co.*, 561 U.S. at 301).

The parties now before this court agreed to arbitrate "any dispute" arising under the Agreement (Dkt. No. 5 at 14). Nonotuck premises its Chapter 93A claims on Foothold's allegedly unfair pre-Agreement misrepresentations about the capabilities of its AWARDS software and its ability to timely complete installation of the system (Dkt. No. 5 at 6-8). Nonotuck alleges that more than a year after the agreement was fully executed, Foothold's AWARDS system was not operational. It asserts that Foothold promised and contracted with Nonotuck to provide certain specific functionality that it has not been able to provide, and that, overall, Foothold promised a flexible system that has not materialized (*Id.*).

Based on the allegations in the complaint, resolution of Plaintiff's Chapter 93A claims may require a decision as to whether delay in implementing the system was exclusively Foothold's fault or whether Nonotuck contributed to delay by, for example, failing to provide timely access to its forms, reporting requirements, and key personnel, or providing incomplete or confusing information for configuration of the system or otherwise failing to comply with some obligation Nonotuck had under the Agreement. Those claims also may require comparing Nonotuck's evidence about pre-Agreement promises and representations made by Foothold with Foothold's undertakings in the Agreement and the addendum thereto. Given that a number of factual disputes surrounding Nonotuck's Chapter 93A claims likely will have to be resolved by reference to what was required of the parties by the terms of the Agreement, the court has little

7

difficulty in concluding that Nonotuck's Chapter 93A claims constitute a dispute "arising under" the Agreement, and are therefore subject to arbitration. *See Grand Wireless, Inc.*, 748 F.3d at 8.

Even if the arbitration clause's applicability to Nonotuck's Chapter 93A claims was less apparent than it is, I would still conclude that the arbitration provision applies to those claims based on the presumption favoring arbitrability. Plaintiff invokes Chapter 93A based on its assertions that Defendant misrepresented the capabilities of its software and its ability to complete a timely installation, thereby unfairly inducing Plaintiff to enter into the Agreement (Dkt. No. 5 at 6-8). In *Dialysis Access Ctr.*, the First Circuit addressed the arbitrability of a dispute where, as in this case, the arbitration clause in the agreement covered "any dispute that may arise under" the parties' management services agreement. 638 F.3d at 377. In *Dialysis Access Ctr.* – again, as in this case – the plaintiffs alleged that the defendants committed unfair practices by making misrepresentations that fraudulently induced the plaintiffs to enter into the management services agreement with the defendant. *Id.* at 378. The plaintiffs in *Dialysis Access Ctr.* argued that the arbitration clause did not apply because their claims did not "arise from" the agreement but, instead, were based on their complaints about the formation of the contract (which, they contended, was voidable under Puerto Rican law). *Id.*

Applying the rules governing interpretation of arbitration agreements, the First Circuit concluded that:

> the terms of the Arbitration Clause [we]re not clear or specific and le[ft] room for reasonable diverse interpretations on the issue of whether the parties agreed to arbitrate [the plaintiffs'] fraudulent inducement claim and the resulting dispute over the validity of the [management services agreement]. Thus, [the court found] that the Arbitration Clause [wa]s ambiguous on this issue. Nevertheless, . . . the strong federal pro-arbitration policy establish[ed] a presumption (which [the plaintiffs] failed to rebut) that the Arbitration Clause's "arising under" language [wa]s sufficiently broad to encompass [the plaintiffs'] claims.

8

*Id.* at 379.  In reaching this conclusion, the First Circuit reviewed precedent from other circuits, concluding that, with the exception of the United States Court of Appeals for the Ninth Circuit, all of the circuit courts that had ruled on the issue had concluded that an arbitration clause applicable to claims "arising under" an agreement was sufficiently broad to cover claims based on alleged misrepresentations aimed at fraudulently inducing a party to enter into an agreement. *Id.* at 380-81 (citing *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 578 (6th Cir. 2003); *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000); *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 386 (11th Cir. 1996); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993); *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 637 (5th Cir. 1985)).  *See also ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 33 (2d Cir. 2002) (severely limiting holding of *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961)); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225-26 (2d Cir. 2001) (same); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 854 n.6 (2d Cir. 1987) (acknowledging inconsistency between federal policy favoring arbitration and *Kinoshita* decision); *S.A. Mineracao Da Trinidad-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984) (same); *but see Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294-95 (9th Cir. 1994) (reading "arising under" arbitration clause narrowly); *Mediterranean Enters. Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (same).

The First Circuit's *Dialysis Access Ctr.* decision is controlling here.  Plaintiff has offered nothing to rebut the presumption in favor of arbitration.  Thus, the "arising under" language of the arbitration clause in the Agreement between Nonotuck and Foothold, even if ambiguous, must be viewed as sufficiently broad to encompass Nonotuck's Chapter 93A claims insofar as those claims are based on alleged misrepresentations during contract formation.

9

Finally, to the extent Plaintiff argues categorically that Chapter 93A claims are not subject to arbitration, that argument fails as a matter of law. Plaintiff has pointed to no authority in support of this argument and ignores precedent to the contrary. The Massachusetts Supreme Judicial Court ("SJC") has ruled repeatedly that Chapter 93A claims can be the subject of an arbitration agreement. For example. in *McInnes v. LPL Fin., LLC*, 994 N.E.2d 790 (Mass. 2013), the SJC held, in a § 9 consumer-to-business claim, that even if § 9 "explicitly prohibited a court from compelling arbitration of a § 9 claim, the State law would be in conflict with and displaced by the FAA and could not apply to any arbitration agreement governed by the FAA." *Id.* at 797. The Agreement in this case involves commerce and is governed by the FAA. Thus, even if § 11 of Chapter 93A – the section of Chapter 93A invoked by Plaintiff – prohibited a court from compelling arbitration, such a prohibition would be in conflict with and displaced by the FAA. *See id. See also Drywall Sys., Inc. v. ZVI Constr. Co., Inc.*, 761 N.E.2d 482, 484 (Mass. 2002) (Chapter 93A, § 11 claims were subject to arbitration where agreements provided for arbitration of any controversy or claim arising out of or relative to a subcontract).[2]

For the foregoing reasons, I recommend that the court grant Defendant's Motion to Dismiss and Compel Arbitration in its entirety.

C. <u>Plaintiff's Motion to Stay Arbitration</u>

---

[2] It is not clear to the court what Plaintiff intends by its repeated references to "jurisdictional arbitrability" or its reliance on *Oliveira v. New Prime, Inc.*, 141 F. Supp. 3d 125 (D. Mass. 2015) (Dkt. Nos. 7, 14, 19). *Olivera* addressed an exception to arbitrability set forth in § 1 of the FAA, which exception plays no role in this case. Plaintiff has not identified any such FAA exception that might apply to the Agreement or to its claims in this case. If by "jurisdictional arbitrability," Plaintiff means that a court, rather than an arbitrator, should make an initial determination about the scope of the arbitration provision in the Agreement and its applicability to Plaintiff's claims, the court's ruling on this report and recommendation will constitute such a determination.

What has already been said compels denial of Plaintiff's Motion to Stay Arbitration. The arbitration provision in the Agreement applies to Foothold's claims against Nonotuck (and to all of Nonotuck's claims against Foothold). Nonotuck does not dispute that Foothold properly initiated an arbitration proceeding. Accordingly, I recommend that Plaintiff's Motion to Stay Arbitration be denied.

D. Disposition of the Case

"'Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the lawsuit, if *all* claims asserted in the case are found arbitrable.'" *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 351 (D. Mass. 2015) (quoting *Next Step Med. Co. v. Johnson & Johnson, Int'l*, 619 F.3d 67, 71 (1st Cir. 2010)). Dismissal rather than a stay seems appropriate where, if the recommendations set forth herein are adopted, all of the parties' claims will have been found to be arbitrable and an arbitration has been initiated in New York (Dkt. No 22 at 1).

IV. CONCLUSION

For the foregoing reasons, this court recommends that Plaintiff's Motion to Remand be DENIED; Defendant's Motion to Dismiss and Compel Arbitration be GRANTED; and Plaintiff's Motion to Stay Arbitration be DENIED.[3] I further recommend that the presiding

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*,

District Judge enter an order directing the parties to proceed to arbitration in accordance with the terms of their Agreement, *see* 9 U.S.C. § 4, and dismiss this case with prejudice and close it on the court's docket.

DATED: November 5, 2017                             /s/ Katherine A. Robertson
                                                                 KATHERINE A. ROBERTSON
                                                                 United States Magistrate Judge

---

474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.